IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STELLA K., <br><br>            Plaintiff, <br><br>     v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br>            Defendant. | NO. EDCV 24-0119-AGR <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff[1] filed this action on January 18, 2024.  The parties filed briefs on the disputed issues.  The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court affirms the decision of the Commissioner.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 6, 7.)

1

**I.**

**PROCEDURAL HISTORY**

On July 30, 2021, Plaintiff filed an application for disability insurance benefits and alleged an onset date of November 24, 2020. Administrative Record ("AR") 16. The application was denied initially and upon reconsideration. AR 16, 186-90, 198-204. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On January 17, 2023, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. AR 79-117. On March 15, 2023, the ALJ issued a decision denying benefits. AR 13-33. The Appeals Council denied review on December 1, 2023. AR 1-7. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. *Smith v. Berryhill*, 587 U.S. 471, 474 (2019). The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam).

"Substantial evidence" means "'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016).

2

## III.
## **DISCUSSION**

### A. **Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B. **The ALJ's Findings**

The ALJ found that Plaintiff last met the insured status requirements on December 31, 2021. AR 19. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff had the severe impairments of multiple sclerosis ("MS"), status post anterior cervical discectomy and fusion, obstructive sleep apnea, obesity, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder ("PTSD"). AR 19. Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. AR 20.

The ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work except that she could lift/carry twenty pounds occasionally and 10 pounds frequently; push/pull occasionally with the arms; stand/walk for six hours of an eight-hour workday with standard breaks, for thirty minutes at a time, with the option to sit at the work station for ten minutes and continue working after thirty minutes of standing or walking; sit for six hours

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

of an eight-hour workday with standard breaks; occasionally stoop, climb ramps and stairs, kneel, crawl, and crouch; never climb ladders, ropes, and scaffolds or balance; and frequently reach to the front and sides and occasionally reach overhead.  She must avoid concentrated exposure to extreme heat, extreme cold, and vibrations and must never be exposed to unprotected heights and dangerous, unprotected machinery.  She could understand, remember, and carry out simple tasks but not at an assembly line rate, and she could make simple work-related decisions.  AR 22.

The ALJ determined that Plaintiff could not perform her past relevant work, but there were jobs that existed in significant numbers in the national economy that she could perform.  AR 27-28.  Plaintiff, therefore, was not under a disability within the meaning of the Social Security Act from the alleged onset date of November 24, 2020, through December 31, 2021, the last date insured.  AR 28-29.

### C. Subjective Allegations

Plaintiff asserts a single claim for relief, alleging that the ALJ erred by failing to articulate legally sufficient reasons for discounting her subjective symptom complaints.

"'An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted).  "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms."  *Id.*

"Then, provided 'there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific,

clear and convincing reasons for doing so.'" *Id.* at 1112 (citation omitted). The Ninth Circuit requires that the ALJ "'specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.'" *Id.* (citation omitted). "'[A]n ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014) (citation omitted).

Plaintiff contends that she was unable to work due to a combination of physical and mental impairments, including MS, degenerative disc disease, obstructive sleep apnea, major depressive disorder, and PTSD. AR 101, 320. She reported that she underwent cervical spinal fusion surgery in 2015, but that the procedure did not eliminate her symptoms and that she continued to experience chronic neck pain. AR 92, 319-20. As a result of her MS, Plaintiff described persistent symptoms, including numbness and tingling sensations, tremors in her hands, sensitivity to extreme temperatures, visual disturbances, and balance issues that required her to use a cane for ambulation. AR 87, 91, 93-95, 319-20, 327. She also reported experiencing severe fatigue, which necessitated daily rest and frequent naps. AR 87, 91, 105, 319-20. In addition to her physical impairments, Plaintiff described significant cognitive and psychological difficulties, such as memory problems, difficulty concentrating, racing thoughts, anxiety, and trouble finding words. AR 92, 97-98, 319-20, 325. She estimated that she could stand or walk for no more than twenty minutes before becoming unsteady and at risk of falling, and that she could sit for no more than twenty minutes at a time due to stiffness and discomfort. AR 95-96, 101-02. She further reported difficulty bending, climbing stairs, and walking without assistance, often needing to hold onto walls for support. AR 95-96. Although she was able to perform some household chores and other activities of daily living, Plaintiff stated that she had to take frequent breaks and lie down multiple times per day to manage her symptoms. AR 102-05.

In his decision, the ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 23. The ALJ identified several reasons for discounting Plaintiff's subjective symptom testimony: (1) the objective medical evidence did not fully support her claims; (2) she made inconsistent statements about her symptoms to her medical providers, and (3) her treatment history reflected generally conservative and/or effective care. AR 23-27. As discussed below, these justifications are clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptom complaints.

First, the ALJ found that Plaintiff's subjective complaints were not supported by the objective medical evidence. AR 23-27. Although a claimant's statements cannot be rejected solely due to a lack of objective support, the absence of corroborating medical evidence is a relevant factor in assessing the credibility of symptom allegations. 20 C.F.R. § 404.1529(c)(4) (an ALJ evaluates a claimant's statements in light of the objective medical evidence and other evidence in the record). Plaintiff was diagnosed with relapsing-remitting MS[4] in 2015. AR 700. A 2018 MRI of her brain showed white matter disease consistent with MS, but follow-up MRIs conducted in February 2019, April 2020, August 2021, and September 2022 revealed no new lesions or enhancement, indicating disease stability. AR 502, 620, 632, 634-35, 1064, 1085. Neurological examinations during the relevant period showed a normal gait, generally full muscle strength, and intact sensation. AR 579-80, 584, 594, 620, 624, 630, 659-

---

[4] Relapsing-remitting MS is the most common form of the disease, characterized by periods of new symptoms (relapses) followed by periods of partial or complete recovery (remissions), which can last for months or even years. Multiple Sclerosis, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269 (last visited May 28, 2025).

60, 999-1000, 1004-5, 1063-64, 1078, 1104.  In January 2022, Plaintiff's treating neurologist observed some decreased strength and difficulty with walking, but no signs of ataxia or imbalance.  AR 1078.  He noted that her MS was "not active" and remained stable on her current medication regimen with Copaxone.  AR 1077, 1120.  He assigned her an Expanded Disability Status Scale ("EDSS") score of 2.5, indicating minimal functional impairment.  AR 1065, 1073, 1079.  Additionally, the State Agency medical consultants -- whose assessments were the only medical opinions in the record -- reviewed the evidence and concluded that Plaintiff's physical impairments did not preclude her from working.  AR 126-28, 154.

Regarding Plaintiff's mental impairments, she reported symptoms including difficulty concentrating, memory problems, racing thoughts, depression, and anxiety.  AR 92, 97-98, 319-20, 325.  However, the medical evidence indicated that these symptoms were generally well controlled with adherence to prescribed medications.  Aside from intermittent reports of anxious or depressed mood, her mental status examinations were largely unremarkable, consistently reflecting normal thought processes, intact cognition, appropriate judgment, and good insight.  AR 541-42, 826, 922, 935, 1104, 1118, 1124, 1129.  The State Agency psychological consultants who reviewed the record assessed only mild mental functional limitations.  AR 124, 155.  Taken together, this evidence supports the ALJ's conclusion that the objective medical evidence did not substantiate the level of limitation Plaintiff alleged.

Second, the ALJ determined that Plaintiff's symptom allegations were inconsistent with statements she made to her treating providers.  AR 23-27.  An ALJ may properly reject a claimant's symptom testimony when she makes inconsistent statements concerning her symptoms.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  While Plaintiff alleged that she was unable to work due to extreme fatigue, neck pain, hand tremors, balance problems, and mental health issues, she made contrary statements to her medical providers.

1  For example, in October 2020, she reported doing well with no complaints.  AR
2  583.  She stated that she was walking one mile a few times per week and that her
3  hand issues had resolved.  AR 579, 583, 621, 943, 999.  She also reported using
4  her CPAP machine for her obstructive sleep apnea and waking up more
5  refreshed.  AR 619.  Regarding her neck pain, she stated that it was well
6  controlled with medication and declined further evaluation or treatment.  AR 1130.
7  As for her mental health, Plaintiff consistently reported a stable mood, except
8  during periods of family-related stress, particularly while caring for her four young
9  grandchildren.  AR 937, 939, 941, 945, 947, 949, 953, 955, 959, 961, 974, 1243,
10 1245, 1251-52, 1254.  She also told her treating provider that she felt "fine"
11 mentally when she adhered to her prescribed medications.[5]  AR 883.  These
12 statements undermined her hearing testimony and supported the ALJ's
13 conclusion that her symptom allegations were not fully credible or consistent with
   the overall record.
14      Finally, the ALJ cited Plaintiff's effective treatment as a basis for
15 discounting her subjective complaints.  AR 23-27.  In assessing a claimant's
16 subjective symptoms, an ALJ may properly consider the "type, dosage,
17 effectiveness, and side effects of any medication" a claimant has taken to
18 alleviate pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(iv); *see also Warre*
19 *v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)
20 ("Impairments that can be controlled effectively with medication are not
21 disabling").  Here, as previously noted, Plaintiff's medication regimen was
22 effective in controlling her MS symptoms and her mental health issues.  She also
23 declined further treatment and evaluation for her neck pain, suggesting that it was
24 adequately controlled.  AR 1130.  As for her obstructive sleep apnea, she stated
25 that her CPAP machine helped with her sleep, and she did not seek any further

---

[5] Additionally, although not specifically cited in the ALJ's decision, the record reflects that Plaintiff reported going to a theme park with her family in October 2021 and stated that she had a nice time.  AR 1243.  She was also able to go on vacation.  AR 1257.

treatment for this condition. AR 619, 1063. Accordingly, the ALJ's rationale that treatment had been relatively effective in controlling Plaintiff's symptoms constituted a specific, clear, and convincing reason to discredit her symptom testimony.[6]

In sum, the ALJ articulated specific, clear, and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's subjective symptom testimony.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: July 9, 2025

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[6] To the extent Plaintiff is arguing that the ALJ erred by failing to consider her husband's statements, any error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's claims] also discredits [the lay witness's] claims."); *see also Metcalf v. Kijakazi*, 2022 WL 17592194, at *2 (9th Cir. 2022) (same).